In the Matter of the Application of ROSE ROSENBERG, Petitioner, for a Final Order against the BOARD OF ESTIMATE OF THE CITY OF NEW YORK and Others, Respondents.

Supreme Court, Kings County, December 20, 1938.

*Lotterman & Tepper* [*Louis A. Tepper* and *Joseph Lotterman* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel,* for the respondents.

RIEGELMANN, J.   This is an application to compel the New York city employees' retirement system to retire petitioner pursuant to section B3–40.0 of the Administrative Code (formerly section 1714 of the Greater New York Charter) for accidental disability received in the line of duty.   Petitioner also seeks to vacate and annul a recommendation by the medical board of the city retirement system that petitioner be retired for ordinary disability and rejecting her claim for retirement for accidental disability.

The petitioner has been a policewoman in the police department of the city of New York since August 15, 1918.   She alleges that during the year 1924 she was assigned by her superiors in the police department to perform special duties in connection with an investigation which was then being conducted by the district attorney of Kings county into the unlawful and illegal practice of medicine in the said county; that on March 3, 1924, as an incident to the performance of such special duties, she was instructed to investigate one Lillian Edwards, a chiropractor, who was suspected of illegally practicing medicine; that she called at the office of the said Lillian Edwards and, for the purpose of procuring evidence against the latter, complained that she suffered from pains in the chest and between the shoulder blades; that thereupon Lillian Edwards manipulated various parts of the front and back of petitioner's body, including her spinal column, chest, ribs and abdomen; that an enormous amount of strength and pressure was applied to the various parts of petitioner's body, particularly in and to the petitioner's chest, ribs and abdomen.   Petitioner further claims that, as a result of the " treatment " to which she was thus subjected at the time in question, her twelfth rib was fractured and her right lung injured " either by the fragments of the broken rib or by the severe violence and pressure exerted by Lillian Edwards during the course of her manipulation of the petitioner's body."

Petitioner alleges that, as a result of the injury, infection and bronchitis subsequently developed which caused bronchiectasis and lung abscesses; that following the alleged injury, and upon repeated occasions thereafter, petitioner was examined by various physicians of the police department; that these physicians were of the opinion that the injury had been incurred in "line of duty." The petition then recites at length the subsequent medical history of the case and petitioner's alleged unavailing efforts to effect a cure during which time she received lengthy periods of treatment, from time to time, in some eight hospitals.

On February 11, 1938, the police commissioner, in accordance with section B3–39.0 of the Administrative Code, applied to have petitioner retired from ordinary disability upon the ground that she was suffering from a chronic ailment which prevented her from performing her duties in the police department. On March 3, 1938, petitioner appeared before the medical board of the retirement system and submitted to a physical examination. Thereafter, and before the medical board had transmitted its findings to the board of estimate for final action, the petitioner applied for accident disability retirement pursuant to section B3–40.0 of the Administrative Code and submitted various proofs in support of her claim that her impaired physical condition was the result of the accident above described. On June 16, 1938, the medical board reported to the board of estimate that petitioner was suffering from certain specified ailments which "could not possibly have been acquired as the result of an accident in line of duty." In its report the medical board, therefore, recommended that the application for accident disability retirement be denied, but that, since petitioner was incapacitated for the further performance of duty as a patrolwoman, she be retired on account of ordinary disability. It appears from the papers before me that the board of estimate has not yet acted upon petitioner's request for accident disability retirement or upon the police commissioner's request that she be retired for ordinary disability.

Petitioner now seeks an order vacating and annulling the determination of the medical board, staying the board of estimate in the meantime from taking any affirmative action relative thereto, and declaring that she is justly entitled to accident disability retirement.

Respondents urge, as a procedural bar to the maintenance of the proceeding, that it has been prematurely brought. This argument is predicated upon the view that the determination of the medical board may not be reviewed prior to a confirmation thereof by the board of estimate. In my opinion the decision rendered in *Nash* v. *Brooks* (276 N. Y. 75) destroys the effect of such contention.

Respondents also maintain that, irrespective of whether or not the present incapacity is traceable to the accident above described, petitioner is not entitled to accident disability retirement. In support of such contention respondents point to the provisions of section B3–40.0 of the Administrative Code (formerly section 1714 of the Greater New York Charter). That section provides for accident disability retirement upon a showing that " such member is physically or mentally incapacitated for the performance of city service as a natural and proximate result of an accidental injury received in such city service *while a member*, and that such disability was not the result of wilful negligence on the part of such member."

The term " member," as used in the above, means " any person included in the membership of the retirement system." (See § B3–1.0, subd. 6, of the Administrative Code, formerly Greater New York Charter, § 1700, subd. 6.)

It is the respondent's contention, relying upon the language of section B3–40.0, that membership in the retirement system *at the very time of the occurrence of an accident* is a condition precedent, in any event, to retirement on account of accidental disability. The accident, which petitioner alleges is proximately the cause of her present disability, occurred during the year 1924. At that time petitioner was not a member of the system. Petitioner was appointed to the police force in 1918, but did not join the New York city employees retirement system until May 31, 1934.

Upon joining the retirement system in 1934, however, petitioner applied for and received " prior service " and " additional city service " credit for the period dating from August 15, 1918, to May 31, 1934. Petitioner, in purchasing credit for " additional city service," actually paid into the annuity saving fund a sum equivalent in all respects to the total amount she would have been required to pay had she been a member from the earliest date of eligibility thereto. She thus insists that when she became a member of the retirement system in 1934, and paid up arrears for all prior service, she became entitled *per se* to all the rights, privileges and benefits which would have been conferred upon her as a consequence of actual membership for the period in question. It is, therefore, claimed, under the circumstances, that the right to be retired for accidental disability exists in spite of the fact that the accident occurred prior to the time when petitioner became a member of the retirement system.

The provision of law which petitioner particularly invokes as the basis for her contention is found in section B3–6.0 of the Administrative Code (formerly section 1703-a of the Greater New York Charter). That section provides that an employee shall become

" *entitled to credit* " for prior service by his payment into the annuity savings fund of an amount equal to that which he would have paid had he become a member on his first day of eligibility.

It is my view that the narrow construction which respondents seek to place upon the above section is untenable. The cardinal purpose of a pension system is to encourage continuity of service on the part of the employees and thereby to promote public efficiency. A liberal pension system is one of the chief factors which attracts " career " men and women to make public service their life work. A construction of the statute which tends to defeat such purpose should, if possible, be avoided. To some extent, at least, the broad object for which the statute is designed would be frustrated if the narrow interpretation which respondents offer be accepted as sound. Section B3-6.0 neither expressly nor by fair implication limits or qualifies the extent of " credit " to which a person becomes entitled upon complying with the provisions thereof. Manifestly had a limitation in the enjoyment of the prerogatives of membership been contemplated, it is fair to assume that an intendment to such effect would have been specifically expressed in the statute or in the application for membership and not casually left to restriction by the process of judicial pronouncement. The petitioner was taken into membership and allowed credit for " prior service " and " additional city service " without qualification. Full payment for such benefit was exacted from her. In the absence of qualifying language I hold that the petitioner, upon complying with the provisions of section B3-6.0 became vested with all the rights and privileges of membership, including the right to apply at this time for accident disability retirement even though the injury was received in 1924.

The foregoing disposes of respondents' contention that irrespective of whether or not the present incapacity is the proximate result of the accident, as a matter of law, petitioner is not entitled to accident disability retirement. We now come to the question as to petitioner's right to accident disability retirement upon the facts. It is conceded that petitioner is presently incapacitated for the performance of her duties. If, as alleged by petitioner, such disability is the natural and proximate result of the accidental injury received by her in line of duty and occurred without willful negligence on her part, petitioner is entitled to the relief sought. (Administrative Code, § B3-40.0.)

Pursuant to section B3-13.0 of the Administrative Code, a duty is imposed upon the medical board to " investigate *all* essential statements and certifications by or on behalf of a member in connection with an application for disability retirement." In support

of her contention that her present disability is the proximate result of an accident received by her in line of duty, petitioner has submitted considerable proof. She further alleges that the medical board in arriving at its determination in denying her application for accident disability retirement refused to consider the various proofs which petitioner submitted; failed to give credence to the records of the police department concerning the examination of the petitioner by departmental surgeons and physicians; refused to consider the records of the various hospitals to which petitioner had resorted for treatment from time to time since the occurrence of the alleged accident in 1924; refused her request that she be permitted to call medical experts who would testify in support of her application; and, further, that the findings of the board were based upon a brief, cursory and inadequate physical examination of petitioner and upon one fragmentary and incomplete police department record of the occasion upon which petitioner was allegedly injured. Respondents deny all of the foregoing allegations.

The issue as to whether or not the present disability is the natural and proximate result of an accidental injury received by petitioner in line of duty thus raised precludes granting to petitioner at this time the final order sought (formerly designated as a peremptory order of mandamus). In my opinion, however, a sufficient showing has been made to justify a trial of the issue under the provisions of section 1295 of the Civil Practice Act. (This procedure is now indicated in place of the former alternative order of mandamus; Civ. Prac. Act, art. 78; Laws of 1937, chap. 526.) A jury having been seasonably demanded, such trial shall be by court and jury. Settle order on notice.